# EXHIBIT A



# OFFICE OF THE GOVERNOR

June 2, 2006

*Via Facsimile and U.S. Mail*

Mr. Glynnon Evins, D-24948
**Correctional Training Facility**
FW – 316L
Post Office Box 686
Soledad, California 93960

Dear Mr. Evins:

    Penal Code section 3041.2 authorizes the Governor to review parole decisions of the Board of Parole Hearings (Board) concerning persons sentenced to an indeterminate term upon conviction of murder.

    After considering the same factors considered by the Board, the Governor has invoked his authority to <u>reverse</u> the Board's decision to grant parole in your case. The Governor's statement of the reasons for his decision is attached.

    A copy of this letter is being provided to you via facsimile, and the signed original (along with a statement of the reasons for his decision) is being sent by mail. Additionally, we are transmitting a copy of this letter and the attached decision to the Chairperson of the Board of Parole Hearings.

Sincerely,

ANDREA LYNN HOCH
Legal Affairs Secretary

Attachment

cc: Board of Parole Hearings (w/attachment)

# INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

GLYNNON EVINS, D-24948
SECOND-DEGREE MURDER

AFFIRM: _____

MODIFY: _____

REVERSE: \_\_\_\_X\_\_\_\_\_

On January 14, 1985, 36-year-old Glynnon Evins shot and killed Otis Ray Rogers. According to the probation report, the morning of Mr. Rogers' murder, Mr. Evins and his friend, Kenneth Parker, went to the home of Mr. Evins' former girlfriend, Marcy Johnson, in Fresno, California. When they arrived, Ms. Johnson and Mr. Rogers were sleeping in a bedroom. Also present in the home at the time were another woman and her children.

The probation report states that while Mr. Parker waited for him, Mr. Evins kicked open the bedroom door and proceeded to enter with a gun. According to the record from Mr. Evins' 2006 parole hearing, once Mr. Evins was inside the room, he awoke Mr. Rogers, ordered him to get up, and shot him once in the chest after a brief argument. Mr. Rogers died shortly after from his gunshot wound and was pronounced dead at the scene. The hearing record also states that Mr. Evins fled the scene with Mr. Parker immediately after the murder, and that shortly after the crime, Mr. Evins absconded to southern California where he was arrested six months later.

A jury convicted Mr. Evins of second-degree murder with the use of a firearm. The jury also found that Mr. Evins had a prior serious felony conviction for voluntary manslaughter. He was sentenced to 15 years to life in prison for the murder, a two-year consecutive term for the firearm enhancement, and a five-year enhancement for the previous voluntary manslaughter conviction. The latter sentence was stayed by the court.

With regard to his earlier voluntary manslaughter conviction, it occurred approximately nine years before the murder of Mr. Rogers. At his 2006 parole hearing, Mr. Evins told the Board that this killing resulted from a struggle in which he wrestled away a handgun belonging to a man that was choking his girlfriend and threatening him; once Mr. Evins took possession of the weapon, he shot the man three times, killing him. His other criminal history includes a grand-theft conviction in 1980.

Since entering state prison for Mr. Rogers' murder, Mr. Evins has been counseled three times for minor misconduct, the last of which was in 1992. To his credit, he has never been disciplined for violating prison rules, and he has worked to enhance his ability to function within the law upon release. He has taken high-school and college classes, has earned vocational certificates in Data Processing Concepts, Business Applications, Information Technologies, and Integrated Business

Glynnon Evins, D-24948
Second-Degree Murder
Page 2

Administration, and has completed several Arts in Corrections courses. He has held a variety of institutional jobs and has availed himself of an array of self-help and therapy, including Alcoholics Anonymous and Narcotics Anonymous since 1995, a veterans' support group, which he co-founded, and a Hepatitis C support group. Additionally, he has volunteered to cook for an annual children's holiday festival, to teach education classes to other inmates, and to participate in various charitable fundraisers.

Moreover, Mr. Evins has the support of his family and others and has made realistic, confirmed parole plans in Santa Clara County, the county to which the Board approved his release, to live with a cousin and work at that cousin's seemingly established hot dog business. He also plans to apply for veterans' benefits and collect social security.

But despite any positive factors that may support his parole suitability at this time, the second-degree murder for which he was convicted was an especially heinous one because it was carried out in a manner demonstrating callous disregard for human suffering and life. As I said in 2004 when reversing an earlier Board's decision to grant parole to Mr. Evins, he snuck into Ms. Johnson's home, awoke Mr. Rogers, ordered him to get up, and then shot him in the chest and left him there to bleed to death. Further, there is evidence in the record before me that this murder involved some level of premeditation. In particular, when asked by the commissioner during his 2006 parole hearing whether he planned on shooting the other person who he thought was in the bedroom with Ms. Johnson, Mr. Evins stated, "possibly because we had had – this other person had pulled a gun on me at that same house, probably within the last 48 hours of that and robbed me." Later, at that same hearing, he said, "it was the wrong person, and I did go there with intention to get [a different] guy …." According to the probation report, Mr. Evins ex-girlfriend, Marcy Johnson, told police that Mr. Evins made statements that he would kill anyone who messed around with her. The gravity of the murder committed by Mr. Evins is alone a sufficient basis on which to conclude presently that his release from prison would pose an unreasonable public-safety risk.

The 2006 Board concluded that Mr. Evins committed this murder as a result of "some significant stress" in his life at the time, noting Mr. Evins' return from Vietnam and finding himself in a life consumed by drugs and the "sort of people that run in that particular life." Psychological reports indicate that Mr. Evins suffered from post-traumatic stress disorder stemming from his military service in the Vietnam War. Another psychological report, in 2003, concluded that this condition along with his heavy cocaine use at the time impaired his judgment and led to Mr. Rogers' murder. As I stated previously in Mr. Evins' case, without minimizing the seriousness of post-traumatic stress disorder for Vietnam veterans, any stress he was under when he murdered Mr. Rogers is insufficient to, at this time, tip the scales in favor of his parole suitability.

Although Mr. Evins says that he accepts responsibility and is remorseful for Mr. Rogers' murder, he has maintained for many years that the gun went off accidentally. His current version at least acknowledges that he pulled the trigger, whereas his initial story to investigators was that he did not shoot Mr. Rogers at all. As I said in 2004, Mr. Evins story has changed quite a bit over the

Glynnon Evins, D-24948
Second-Degree Murder
Page 3

years. According to a 1989 psychological evaluation, Mr. Evins reportedly had gone to Ms. Johnson's house, described as a drug house, to lend a friend some money and to collect money owed. There, when trying to wake Ms. Johnson, she startled him and caused his gun to accidentally go off, hitting Mr. Rogers who was in bed with Ms. Johnson. He claimed he did not know Mr. Rogers was in the bed at the time. According to a 1994 psychological evaluation, Mr. Evins again claimed that he did not know Mr. Rogers was in the bed, but changed the version slightly by saying that Mr. Rogers jumped up from the bed, causing the gun to accidentally go off, killing him. During the 1996 psychological evaluation, Mr. Evins stated that he had a gun with him on the day of the murder because he had been robbed previously at Ms. Johnson's house, and he shot automatically when Mr. Rogers jumped up from the bed. During the 1999 psychological evaluation, Mr. Evins stated that Mr. Rogers surprised him in a dark room, and that the shooting was accidental. During his 2000 prisoner evaluation he stated that he had a gun when he entered Ms. Johnson's room because his judgment was impaired by drugs and he thought he was being set up, and that he shot Mr. Rogers accidentally. During the 2003 psychological evaluation, Mr. Evins stated that he was carrying a gun at the time of the murder because his brother's car was shot full of bullet holes the night prior to the crime, that he could not recall why he went to the home, and that he shot Mr. Rogers after waking him up and arguing with him.

The Fresno County District Attorney's Office, like in past years, opposed Mr. Evins' parole at his most recent hearing, citing concerns that Mr. Evins' claims that both Mr. Rogers' murder and the previous voluntary manslaughter for which he was convicted were accidental.

Now age 57, after being incarcerated more than 20 years, Mr. Evins has made some encouraging gains. But given the current record before me and after carefully considering the very same factors the Board must consider, I still find that the negative factors weighing against his parole suitability continue to outweigh the positive ones tending to support it. Accordingly, because I believe his release from prison would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Evins.

Decision Date: 5/23/2006

ARNOLD SCHWARZENEGGER
Governor, State of California