# EXHIBIT B
# Part 3 of 3

50

1   of the crime and has a desire to change toward

2   good citizenship.  The psychiatric report dated

3   June 21, 2003, by Dr. Melvin Macomber appears to

4   support release.  Dr. Macomber states that his

5   violence potential is no greater than the average

6   citizen in the community.  That there is no longer

7   a factor in his life in terms of his previous drug

8   and alcohol abuse.  And he goes on to say the

9   probability of recidivism to drug and alcohol use

10  is nil.  He is a 54-year-old mature individual

11  who's completed 18 years of excellent

12  institutional judgment and he is a changed man

13  from the way he was living at the time of the

14  commitment offense.  The prognosis for successful

15  parole adjustment in this case is excellent.

16  Previous report dated December 27th, 1999, by

17  Dr. M. Carswell, C-A-R-S-W-E-L-L, in that report

18  Dr. Carswell states under assessment of

19  dangerousness, that his violence potential is

20  estimated to be no higher than the average citizen

21  in the community.  The base life offense of which

22  the prisoner has been convicted is murder second,

23  Penal Code Section 187.  The offense occurred on

24  January 15th, 1985.  The term is derived from the

25  matrix located in the CCR, Title XV, at Section

26  2403(c), second-degree murder committed on or

27  **GLYNNON EVINS    D-24948   DECISION PAGE 3    9/15/03**

51

1    after November 8th, 1978. The Panel finds that

2    category 3-C is appropriate in that the victim in

3    this case, Otis Rogers, died of severe trauma. He

4    was shot to death. And all indications are that

5    there was no prior relationship, although the

6    inmate may have known of Mr. Rogers, he apparently

7    did not know him. The Panel assesses 240 months

8    for the base offense, and notes that this is the

9    middle term. There is one additional charge for

10   which to add time and that would be the prior

11   felony conviction, although it was stayed. The

12   court had assessed five years or 60 months,

13   therefore, the Panel assesses, one-half that

14   determinate sentence, which is 30 months, and that

15   would be 667.5 is the Code Section, Prior Felony

16   Conviction, under case number 59402, count number

17   one. The firearm enhancement has already been

18   served, that was consecutive, there's no time

19   added for the firearm enhancement. Therefore, the

20   base life term is 240 months, 30 months for the

21   prior felony conviction, for a total of 270

22   months. Post-conviction credit is awarded from

23   October 27th, 1986, the date the life term

24   started, to September 15th, 2003, of 67 months.

25   Since Mr. Evins has never had a 115, he is awarded

26   full credit for post-conviction credit. Therefore

27   **GLYNNON EVINS    D-24948    DECISION PAGE 4    9/15/03**

52

1   the base period of confinement is 203 months.   The

2   Panel establishes or imposes the following special

3   conditions of parole:   and based on Dr. Macomber's

4   statement of drug and alcohol abuse, the Panel

5   imposes that he will not use or possess alcoholic

6   beverages.   He will just submit to alcohol

7   testing, submit to anti-narcotic testing, submit

8   to THC testing, and participate in a substance

9   abuse program, such as AA or NA.   Additionally,

10   the Panel orders that Mr. Evins be paroled to the

11   county that houses the City of San Jose, since

12   that's where his offer of housing is, and I say

13   that because I can't recall --

14        **ATTORNEY SCHMIDT**:   Santa Clara.

15        **PRESIDING COMMISSIONER LAWIN**:   Santa Clara,

16   it is Santa Clara, okay.   Then it is Santa Clara

17   County that the Panel orders him to be paroled to.

18   And that would be the conditions of parole.   Now

19   Mr. Evins, there is a question about the 30 months

20   because it's really difficult to find in the

21   sentencing transcript whether it was consecutive,

22   but we don't find that there is any service of

23   that, it was stayed.   But we are better off adding

24   it, because Decision Review will take time off if

25   we added too much, but if we didn't add enough,

26   we'd have to do a rehearing.   So we would rather

27   **GLYNNON EVINS    D-24948   DECISION PAGE 5    9/15/03**

53

1  add that time just to be sure and then if we

2  weren't supposed to add it, they will remove it,

3  okay, so I wanted you to understand the reasoning

4  behind that.  I wish you good luck.  I would

5  recommend to you that any additional letters of

6  support, anything additional that you have in

7  terms of (inaudible) or income on the outside that

8  you have or that you get, you get it to the Board

9  immediately so that it goes with your package.

10  And other than that, just continue to maintain

11  your positive program, and we'll see what happens.

12      **DEPUTY COMMISSIONER MEJIA:**  Congratulations,

13  good luck to you.

14      **INMATE EVINS:**  Thank you.

15      **PRESIDING COMMISSIONER LAWIN:**  Thank you.

16  Good luck, and that concludes the hearing, it's

17  6:15.

18      **INMATE EVINS:**  Thank you.

19      **PRESIDING COMMISSIONER LAWIN:**  You're

20  welcome.  Oh, before we go off the record, let me

21  just tell you there is still the process.  You

22  need to understand what the process is, and that

23  is that it goes to Decision Review as any

24  decisions do, and then once it passes there, it

25  goes on to the governor's office, okay.  And you

26  know that there are a number of things the

27  **GLYNNON EVINS    D-24948    DECISION PAGE 6    9/15/03**

54

1   governor can do, so it will be some time yet

2   before there's a final decision.

3         **INMATE EVINS:**  I feel I've made some

4   progress.  Thank you both.

5         **PRESIDING COMMISSIONER LAWIN:**  You're

6   welcome.

7         **DEPUTY COMMISSIONER MEJIA:**  Take care.

8                     --o0o--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                    **PENDING REVIEW**

25   **PAROLE GRANTED**                **AND APPROVAL**

26   **FINAL DATE OF DECISION**_____

27   **GLYNNON EVINS    D-24948   DECISION PAGE 7    9/15/03**

# EXHIBIT "D"

BOARD OF PRISON TERMS

*Original*

STATE OF CALIFORNIA

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION (BPT §2041)

[ ] **PAROLE DENIED**

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

[✓] **PAROLE GRANTED** *Inmate not to be released until Governor exercises review authority.*

A. Base Period of Confinement ............................................ **240** Months

**335276** / **MURDER 2**
Case No.      Count No.      Offense

B. Firearm Enhancement ....................................... + **—0—** Months

C. Other Crimes Total ........................................... + **30** Months

**59403** / **MANSL** **30** mos.
Case No.      Count No.      Offense

_____ _____ _____ _____ mos.
Case No.      Count No.      Offense

_____ _____ _____ _____ mos.    *16.93*
Case No.      Count No.      Offense

D. Total Term ........................................ = **270** Months

E. Postconviction Credit From **10/27/86** To **9/15/03** = **67** Months
                              (Date)          (Date)

F. Total Period of Confinement ......................... = **203** Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

### PANEL HEARING CASE

| | Date |
|---|---|
| *Sharon Lawin* | **9/15/03** |
| *Rolando Vergia* | Date |
| | ~~Date~~ |

COC NUMBER          INSTITUTION          HEARING DATE



CDC Form
Rev. 12-99 DRAFT

# CALCULATION WORKSHEET FOR BPT RELEASE DATE - ISL TERM PLUS DSL TERM, PREPRISON CREDIT DOES NOT EXCEED DSL TERM

This worksheet is used to calculate the Board of Prison Terms (BPT) release date when the BPT finds a life prisoner suitable for parole and grants a parole date. This worksheet is used when the court has imposed consecutive determinate term(s) and the preprison credit does not exceed the DSL term.

## Section A - Verifying the Life Term Starts Date

| | | | |
|---|---|---|---|
| 1. | Start Date: | | 03/10/86 |
| 2. | Plus Total DSL Term: | + | 2 |
| 3. | Equals Base Date: | = | 03/10/88 |
| 4. | Plus Dead Time Occurring While Serving the DSL Term: | + | — |
| | | = | 03/10/88 |
| 5. | Minus preprison credit (presentence, postsentence, vested credit): 223+111+11+5 | - | 350 |
| 6. | Equals Maximum DSL Date: | = | 03/26/87 |
| 7. | Minus CDC conduct credit earned from Start Date through the end of the DSL term (PC 2931; PC 2933; PC 667(b)-(i)/PC 1170.12; PC 2933.1; PC 2933.5): | - | 150 |
| 8. | Equals Life Term Starts Date: | = | 10/27/86 |

## Section B - Calculating the BPT Release Date

| | | | |
|---|---|---|---|
| 1. | Life Term Start Date (Line A-8): | | 10/27/86 |
| 2. | Plus (+) Total Period of Confinement (Years-Months): 203mo (Line "F" from BPT Form 1005) | + | 11m 16y |
| 3. | Equals Base Date: | = | 09/27/03 |
| 4. | Plus (+) Dead Time Occurring After Life Term Starts Date: | + | — |
| 5. | Equals BPT Release Date: | = | 09/27/03 |

## Section C - Scheduling Progress Hearing

| | | | |
|---|---|---|---|
| 1. | BPT Release Date (Line B-5): | | 09/27/03 |
| 2. | Minus Date Parole Granted (Hearing Date): | - | 09/15/03 |
| 3. | Equals Days Remaining to Serve: | = | 12 |
| 4. | Equals Months Remaining to Serve (Divide Line C-3 by 30): | = | |

Refer to California Code of Regulations, Title 15, Division 2 (BPT Rules), Section 2269 to determine the month/year for the progress hearing.

5. Place on _____ Progress Hearing Calendar

Calculated By (Name, & Title): D/Casey CCR Analyst     Date: 09/16/03

Inmate Name: Evens, Glynnon     CDC #: D24048     Location: CR

February 22, 2000                                                          Page 70

# EXHIBIT "E"



# OFFICE OF THE GOVERNOR·

February 11, 2004

### _Via Facsimile and U.S. Mail_

Mr. Glynnon Evins, D-24948
**_Correctional Training Facility, Central_**
C Wing – 308L
Post Office Box 686
Soledad, California 93960

Dear Mr. Evins:

     Penal Code section 3041.2 authorizes the Governor to review parole decisions of the Board of Prison Terms (Board) concerning persons sentenced to an indeterminate term upon conviction of murder.

     After considering the same factors considered by the Board, the Governor has invoked his authority to reverse the Board's decision to grant parole in your case. The Governor's statement of the reasons for his decision is attached.

     A copy of this letter is being provided to you via facsimile, and the signed original (along with a statement of the reasons for his decision) is being sent by mail. Additionally, we are transmitting a copy of this letter and the attached decision to the Chairperson of the Board of Prison Terms.

                   Sincerely,

                   PETER SIGGINS
                   Legal Affairs Secretary

Attachment

cc: Ms. Carol A. Daly, Chairperson, Board of Prison Terms (w/attachment)

GOVERNOR ARNOLD SCHWARZENEGGER • SACRAMENTO, CALIFORNIA 95814 • (916) 445-2841

# INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

**GLYNNON EVINS, D-24948**
**SECOND-DEGREE MURDER**

NO ACTION: _____

MODIFY: _____

REVERSE: _____X_____

On January 14, 1985, 36-year-old Glynnon Evins and a friend went to the home of Mr. Evins' former lover, Marcy Johnson, in Fresno, California. Ms. Johnson and Otis Ray Rogers were sleeping in a bedroom when Mr. Evins and his friend arrived. Another woman and her children were also present in the home. While Mr. Evins' friend waited for him, Mr. Evins entered the bedroom with a gun – and shot Mr. Rogers in the chest. As Mr. Rogers lay bleeding from the mouth and chest, Mr. Evins and his friend left the residence. Mr. Rogers died from his gunshot wound.

Mr. Evins was arrested on July 19, 1985, and a jury convicted him of second-degree murder and the personal use of a handgun. The jury also found that Mr. Evins had a prior serious felony conviction for voluntary manslaughter. He was sentenced to 15 years to life, plus two years for the firearm enhancement.

Mr. Evins is now 55 years old and has spent more than 18 years in prison for Mr. Rogers' murder. His story regarding why he went to Ms. Johnson's home and how he came to kill Mr. Rogers has changed throughout the years.

When he was arrested, Mr. Evins adamantly denied shooting Mr. Rogers at all. And during a 1989 psychological evaluation, he claimed something entirely different. At that time, Mr. Evins stated that he had gone to a drug house to lend a friend some money, and he brought a gun with him because he thought the place was dangerous. While in the house, Mr. Evins intended to wake Ms. Johnson from her sleep to collect money she owed him. As he attempted to wake her, she became startled and caused Mr. Evins to accidentally shoot his gun, hitting Mr. Rogers. Mr. Evins claimed that he did not know Mr. Rogers was in the bed. During a 1994 psychological evaluation, Mr. Evins stated that he did not know Mr. Rogers was in the bed – and when Mr. Rogers jumped up from the bed, Mr. Evins' gun went off, killing Mr. Rogers. Mr. Evins stated in 1996 that he had a gun with him on the day of the murder because he had been robbed previously at Ms. Johnson's house, and Mr. Evins shot automatically when Mr. Rogers jumped up from the bed. During a 1999 evaluation, Mr. Evins stated that Mr. Rogers surprised him in a dark room, and that the shooting was accidental. During a 2000 evaluation, Mr. Evins stated that he could not recall why he went to the home because he had been doing drugs for several days. He did, however, recall receiving a phone call from a friend about buying a motorcycle. His friend picked him up and then brought him to Ms. Johnson's home, stating that someone wanted

Glynnon Evins, D-24948
Second-Degree Murder
Page 2

to see him. He continued to claim that he discharged his gun accidentally when he shot Mr. Rogers.

Likewise, Mr. Evins story changed significantly during his 2003 psychological evaluation. He said that before the murder, his brother's car was parked outside his home where it was shot at repeatedly. Due to this incident Mr. Evins brought a gun when he went to Ms. Johnson's home. When Mr. Evins entered Ms. Johnson's bedroom, Mr. Rogers woke up and began arguing with Mr. Evins. The argument escalated and Mr. Evins shot Mr. Rogers in the chest.

I am troubled by the considerable change in Mr. Evins' story. After first denying that he shot Mr. Rogers at all, he spent years claiming the whole incident was just an accident. It was not until 2003 that he admitted to knowing Mr. Rogers was in the room, arguing with him, and intentionally shooting him. While I am glad that Mr. Evins has finally acknowledged this shooting was not a mere accident, I am concerned that it took him this long to admit or come to terms with the true nature of his crime. This new-found acceptance is too recent to provide sufficient assurance that he is ready for parole. Additionally, I am confused as to why the Board did not address these inconsistencies in Mr. Evins' statements.

I also am troubled by Mr. Evins' criminal history – and the Board's failure to consider the seriousness of one of his past crimes. While he does not have a juvenile record, in 1974 he shot and killed a man who was approaching him and his girlfriend in a threatening manner, and he was convicted of voluntary manslaughter for this crime. Although I realize that Mr. Evins was not convicted for murdering this victim, and that he was apparently acting in self-defense, I am very concerned about his propensity for using guns to deal with his problems. And I note that following his manslaughter conviction, Mr. Evins was convicted for grand theft.

Despite Mr. Evins' criminal history, he has accomplished many things while in prison. He has not had any disciplinary reports for more than 11 years. He has taken adult classes in data processing, business applications, and information technology and has received "A" grades. He received a completion certificate for an integrated business administration course in 1995 and has been enrolled in an independent study program through Coastline Community College since December 2002. He has been active in the arts and received an honorable mention in a prison arts competition in 2000. I commend Mr. Evins for devoting his time in recent years to bettering himself through education and participation in the arts.

Mr. Evins has also worked in many positions while incarcerated, including maintenance in the handicraft and electrical shops, tool room inventory clerk, Men's Advisory Council Chairman, dental lab technician, sorter/assistant tailor in the clothing room, and aide/muralist in the Arts in Corrections program. In all of these positions, Mr. Evins received above-average and exceptional ratings. Mr. Evins has also been active in volunteer work. He participated in various sales to benefit local victims' groups, a fundraiser for a hospital, and assisted in employee appreciation dinners. Mr. Evins has also participated in numerous self-help and therapeutic programs, including Alcoholics Anonymous and Narcotics Anonymous. In 2000 he taught education classes to other inmates. He has received laudatory reports for his active

Glynnon Evins, D-24948
Second-Degree Murder
Page 3

participation in Alcoholics Anonymous and Narcotics Anonymous and volunteer activities. Again, I applaud Mr. Evins for his accomplishments.

I believe Mr. Evins has used his time in prison productively. But I cannot overlook the heinous nature of his crime and Mr. Evins' callous disregard for human suffering and life. He entered another person's home and bedroom, woke a man from his sleep, shot him in the chest, and then left him there as he bled from his fatal wounds. Mr. Evins admits now that there was no reason to shoot Mr. Rogers other than an argument. This was a cold, inexplicable shooting. And I must take into account that Mr. Rogers was the second person shot and killed by Mr. Evins. Based on Mr. Evins' history, I am gravely concerned he will again resort to violence if he is angered or threatened.

I note that the psychological reports indicate that Mr. Evins suffered from post-traumatic stress disorder stemming from his military service in the Vietnam War. The evaluator in the 2003 psychological report stated that this condition and Mr. Evins' heavy use of cocaine impaired his judgment and led to Mr. Rogers' murder. While I do not minimize the seriousness of post-traumatic stress disorder for Vietnam veterans, I also do not consider Mr. Evins' condition or voluntary drug use to be the type of significant stress that would mitigate his actions. This was an unprovoked and completely senseless cold-blooded shooting.

Mr. Evins has the support of his friends and family. If paroled, he plans to live with his cousin in San Jose, California. He also plans to work for his cousin who is opening a street vendor business selling hot dogs. If that business fails, Mr. Evins has indicated that he plans to obtain disability payments. In the meantime, he plans to attend school and receive assistance from his aunt. I question whether Mr. Evins' parole plans are realistic. Mr. Evins' sole prospect for employment is with his cousin's new business selling hot dogs. Given that this is a new venture and that it is unclear whether Mr. Evins' cousin has even opened his business, the likelihood that Mr. Evins will be able to support himself by working for this operation is shaky. Notably, his back-up plans consist of seeking disability or receiving support from his aunt – neither of which provides an acceptable alternative to a stable job.

The Fresno County District Attorney's Office opposes Mr. Evins' parole due to, among other factors, the cold and calculated nature of the crime. I agree with the District Attorney. Given Mr. Evins' history of violence, the inexplicable motive for the murder, and Mr. Evins' callous disregard for Mr. Rogers' suffering, I believe he would pose an unreasonable threat to public safety if he were paroled at this time. Accordingly, I REVERSE the Board of Prison Terms' decision to parole Mr. Evins.

Decision Date: 2/11/04

ARNOLD SCHWARZENEGGER
Governor, State of Californi .

**EXHIBIT "F"**

PSYCHIATRIC EVALUATION
FOR THE BOARD OF PRISON TERMS
NOVEMBER 1989 CALENDAR
CMC-EAST

This is the first report to the Board of Prison Terms on this
inmate.  He was seen one time, on 6/27/89 and his Health Record and
C-file were reviewed.

Mr. Evins is a 40-year-old Black male who is a second-termer.  His
first crime was a voluntary manslaughter, in 1974, for which he
received five years probation.  Following the 1974 murder, Mr.
Evins was evaluated for 90 days at Vacaville which may or may not
have been a psychiatric evaluation.  The current crime occurred in
January, 1985.  While married at that time, he shot a man who was
with his girlfriend in their home.

Mr. Evins had been classified as a "J" here at CMC for some
depression, however, this spring his category was changed to "G.P"
and he was transferred to C-quad.  He had been on Elavil, but I
believe that was started for his headaches.  Currently, Mr. Evins
complains of a history of nightmares which in the last few months
have not been a problem and the fact that loud noises and bangs
leave him anxious for several hours.  He also complains of the
stress of being in prison and away from his family.

Mr. Evins was raised by his grandmother and other relatives, due to
the death of his mother when he was nine months old and the absence
of his father.  He dropped out of high school in Kansas City and
entered the service, the Army, in 1969 and was there until 1972.
He was a combat soldier in Vietnam.  He states he was involved
personally in combat.  He did shoot and hit at least five or six of
the enemy and saw several of them die and saw many other people
die.  Following his tour in Vietnam, he went to Germany.  He said
he did get in trouble to some degree there with several reductions
in rank and was almost court marshalled, but that was not upheld.
He denies the use of any drugs as a teenager, but in Vietnam began
to use marijuana and used it daily from 1970 to 1985.  He did speed
while he was in Vietnam and hashish while he was in Germany from
1971 to 1972.  Mr. Evins was using cocaine from 1976 to 1979.  He
then moved to Fresno to get away from the cocaine, but again became
involved in use and sales of cocaine from 1982 to 1985.  Following
Vietnam, he was involved in a V.A. therapy program in Oakland from
1977 to 1979 with group therapy at least two times a week and also
a V.A. clinic with therapy in Fresno, from 1983 to 1984.

Since coming to CMC, Mr. Evins has been involved in a number of
group therapy programs including six months of Process Group,
ending 3/31/88, Vietnam Veterans Group from 12/3/87 to the present,
eight weeks of Communication Group ending 8-28-87, twelve weeks of
Substance Abuse Group ending 8-28-87, four weeks of Relaxation
Group ending 3-3-87, ten weeks of Rational Behavior Group ending 2-
26-87 and eight weeks of Reality Therapy Group ending 11-21-86.

EVINS, Glynon      D-24948      CMC-E      6/27/89      jag

Psychiatric Evaluation
For the Board of Prison Terms
Page 2

Mr. Evins currently is working in the Hobby Shop. He has generally received good evaluations and he has received excellent grades when he was attending school.

Mr. Evins presents as a calm, appropriately garbed Black male in no acute distress who is calm, friendly and cooperative. He sat calmly in his chair and his speech has a normal rate and rhythm without any abnormalities. His affect was broad and appropriate. Mood, at this time, appears to be stable. There is no abnormal thought content, no hallucinations or evidence of delusions. Thought processes were goal-directed and in tact. He seems to have appropriate, normal psychological insight. Judgment is institutionally appropriate. He has an adequate fund of knowledge. Comprehension is intact and memory is intact.

Mr. Evins explained the crime and states that in fact, the woman who was involved was not a girlfriend, although he had had some degree of a relationship with her. He states, rather, that he happened to be going to a drug house to lend a friend of his some money. He was somewhat afraid because he had been there before and it was somewhat dangerous. He happened to have a small .22 out and when he went to wake up the lady that he knew, that he also went to to get some money returned that he had been owed, she startled when she woke and the gun went off accidently. A shot went off and he didn't know that there was somebody else with her. He seems to demonstrate appropriate remorse and realizes, "It was stupidity." He really wasn't intending to shoot anybody; it happened, he states, by accident. He does admit full responsibility and full involvement. He seems to have reasonable self-understanding. When asked what the causes were of this crime, he states, "Probably number one, it was related to his drug use and number two to the associates and lifestyle he was involved in at that time which involved both the sales and use of cocaine. He seems motivated for change. He seems committed to his children; is proud of them and is involved in their upbringing and wanted very badly for them to have the emotional and financial things that he did not have as a child. He did appear sincere and rehabilitation potential appears to be good.

DIAGNOSIS:

1.   POLYDRUG ABUSE.

2.   POST-TRAUMATIC STRESS DISORDER,
     SECONDARY TO VIETNAM.

3.   RESOLVING ANTISOCIAL PERSONALITY DISORDER.

EVINS, Glynon      D-24948      CMC-E      6/27/89      jag

Psychiatric Evaluation
For the Board of Prison Terms
Page 3

The diagnosed psychopathology has been related to the criminal behavior indirectly in that it clearly predisposed to the offenses, but did not determine them.  During observation in the institution, this inmate has psychiatrically improved greatly.  In a less controlled setting such as return to the community, this inmate is considered likely to hold present gains if he can stay away from substances and if he can stay away from the influence of antisocial associates.  If he does not, it is considered that in all probability, he will deteriorate to his previous state.  From a psychiatric standpoint, this inmate should be urged to continue in his present rehabilitation program as continued benefit is likely. This man demonstrates good insight into the destructive pattern of his life in the past and a genuine remorse and insight and he does not gloss over, deny or use rationalization to accept responsibility for his lifestyle and his crime.  Violence potential outside a controlled setting in the past is considered to have been average and at present, is estimated to be somewhat decreased. Conditions of parole should include involvement in a substance abuse treatment program with ongoing monitoring and he should be involved in appropriate post-traumatic stress disorder programs. He should continue in various therapy programs which will involve both psychiatric and vocational pre-release training, so that he might be prepared psychologically and vocationally to avoid the social influences and lifestyle that in the past have gotten him into trouble.

There are no recommendations to the Classification Committee.

Respectfully submitted,


Randall L. True, M.D.
Staff Psychiatrist


James B. Hollingsworth, M.D.
Assistant Warden, Psych Services


D: 6/267/89
R&T:6/29/89


EVINS, Glynon        D-24948        CMC-E        6/27/89        jag

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1994 CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
September 29, 1994

This is the second psychiatric evaluation for the Board of Prison
Terms on inmate Glynnon Evins, D-24948. This report is the
product of a personal interview as well as a review of his
central file and medical record.

His crime consisted of a 1985 shooting of a man who had been
sleeping with a woman known to him. He had been using cocaine.
He said that he woke the woman because she owed him money. He
had his gun out due to his fear that he had enemies at that
house. He didn't know the man he killed was even there
initially. When the man jumped up, Mr. Evins' gun went off,
killing him. He denied any motive of jealousy or intent to kill
him saying he didn't even know who he was and that the woman was
not his girl friend.

He has had a good record in the Department of Corrections,
receiving no CDC-115 infractions during his incarceration. He
was heavily abusing cocaine and marijuana at the time of his
arrest. Educationally, he has obtained a GED and his high school
diploma. Vocationally, he has trained in refrigeration, heating,
plumbing, electrical, and he once ran a tropical fish store. In
addition, he once was part owner of a home improvement company.
His future plans include going to live with his future wife who
he plans to marry in December in Vallejo. He is not sure yet of
what work he would do.

MENTAL STATUS: Mr. Evins is a well developed, well nourished man
of medium build who was appropriately dressed and groomed. He
seemed reasonably relaxed and cooperative. His speech was clear
and readily understandable. His affect was normal and
appropriate to the content of his thought. His flow of thought
was normal with no hallucinations nor delusions noted. He seemed
fully oriented with normal intellectual functioning. His
attention and concentration were adequate for purposes of this
examination. His insight and judgment appeared to be improved
over his earlier years.

PSYCHIATRIC DIAGNOSIS: DSM IV

AXIS I:    305.60  Cocaine abuse in institutional remission
           305.20  Cannabis abuse in institutional remission
           309.81  Post traumatic stress disorder (Vietnam)

EVINS     D-24948          CTF-CENTRAL        9/29/94    cch

EVINS
D-24948
PAGE TWO

AXIS II:    301.7    Anti-social personality disorder, improving

AXIS III:  No contributory physical disorder

PSYCHIATRIC CONCLUSIONS:  His diagnosed psychopathology appears
to be indirectly related to his offense.  It was certainly a
contributing factor in that he was involved in that drug house
because of his involvement with cocaine but it did not directly
determine what he did there.  He does not have a psychiatric
condition which would benefit from mental health treatment
following his release.  He does appear to be showing improvement
in his behavior, although I wish he had a clearer idea of what
sort of work he would do upon his release.  If released, he
should be able to maintain these gains providing he continues
with his determination to avoid illicit drugs.

SUGGESTED ACTIONS:  If he is to be continued in his present
program, he should be encouraged to continue his participation in
Narcotics Anonymous and to gain further vocational training.  If
he is considered for parole, his level of dangerousness should be
less than for the average inmate provided he continues to avoid
alcohol and illicit drugs.

RECOMMENDATION TO CLASSIFICATION COMMITTEE:  Until released, he
should:

1.    Continue to attend Narcotics Anonymous

2.    Gain further vocational training which will enable him to
      secure viable employment upon his release.

*Bruce Bakeman, Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad

EVINS     D-24948          CTF-CENTRAL          9/29/94    cch

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1996 CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
SEPTEMBER 16, 1996

This is the third psychological evaluation for the Board of
Prison Terms on inmate Glynnon Evins.  This report is the product
of a personal interview, as well as a review of his Central file
and medical record.  He was also a member of my "Lifeskills"
class, and so I knew him from that.

His crime consisted of the 1985 shooting of a man.  His judgment
was apparently impaired by cocaine and certain stressors that he
was under at the time.  He went to the house in the early
morning, entered the bedroom, shook the woman and shot the victim
in the chest.  He denied that the woman with the victim was his
girlfriend.  He said he opened the door, which was not locked, •
and entered the dark room to see a woman friend.  He had his gun
out since he had been robbed at that place before.  When a man
beside her jumped up, inmate Evins said he shot automatically.
He didn't think the man was badly hurt and he left, learning
later that the man died.  He expressed his regret.  Obviously,
his judgment was not too good at the time.  Going calling on a
friend in the early morning hours with a drawn gun would not seem
to be normally acceptable activity.  This is, however, something
that a man who used to stay up for days at a time and use cocaine
might do.

He has had a good record with the Department of Corrections,
having no CDC-115 infractions during his incarceration.

He used to use cocaine heavily and marijuana to a lesser degree
prior to his incarceration, and he does attend Alcoholics
Anonymous now.  Educationally, he has a GED and about one and a
half years of college.  Vocationally, he is trained in
refrigeration and air conditioning, is an electrician and is
trained in construction work.  His future plans include going to
live with his aunt in Vallejo and work on his uncle's ranch in
Santa Rosa.

MENTAL STATUS EXAMINATION:  Inmate Evins is a well developed,
well nourished man of medium build who appeared to be his stated
age of 47.  He was appropriately dressed and groomed, and seemed
to be fully cooperative during the interview.  His speech was
clear and readily understandable.  His affect was normal.  His

EVINS
D-24948
Page Two

to be fully cooperative during the interview. His speech was clear and readily understandable. His affect was normal. His flow of thought was normal with no hallucinations nor delusions noted. He was fully oriented with normal intellectual functioning. His attention and concentration were good. His insight and judgment appear to  much better today than they were at the time of his crime. I think that even he does not realize the extent to which his judgment was impaired by his use of drugs.

PSYCHIATRIC DIAGNOSIS - DSM-IV:

AXIS I:     1)  Cocaine abuse, in remission.
            2)  Cannabis abuse, in remission.
            3)  Post-traumatic Stress Disorder (Vietnam experience).
AXIS II:    Antisocial personality disorder, improved.
AXIS III:   No contributory physical disorder.

PSYCHIATRIC CONCLUSIONS:  His diagnosed psychopathology appears to be indirectly related to his offense. Certainly, his use of cocaine especially was a contributing factor to the decisions he made, but did not fully determine them. He does not have a psychiatric condition which would benefit from mental health treatment following his release. He is showing improvement in his behavior. If released, I expect him to be able to maintain the gains that he has made, provided he continues in his avoidance of illicit drugs.

SUGGESTED ACTIONS:  If he is to be continued in his present program, he should be encouraged to continue his participation in Alcoholics Anonymous and to add to his vocational training whenever possible. If he is considered for parole, his level of dangerousness is likely to be less now than for the average inmate. Conditions for parole should include no alcohol nor illicit drugs.

RECOMMENDATION TO CLASSIFICATION COMMITTEE:  Until released, he should: 1) Continue to attend Alcoholics Anonymous. 2) Add to his vocational training as he is able. 3) If possible, he

EVINS        D-24948        CTF-CENTRAL        09/18/96        gj

EVINS
D-24948
Page Three

should be able to attend a Vietnam group for his post-traumatic
stress disorder, since this has been helpful for him in the past.

*Bruce Bakeman, Ph.D.*

BRUCE M. BAKEMAN, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

EVINS          D-24948          CTF-CENTRAL          09/18/96          gj

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
JANUARY 2000 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
DECEMBER 2, 1999

This is the second psychological evaluation for the Board of
Prison Terms on inmate Glynnon Evins.  This report is the
product of a personal interview, conducted on 12/02/99, as
well as a review of his Central file and unit health record.
This single contact interview was for the express purpose of
preparing this report.

I.    **IDENTIFYING INFORMATION**:

Inmate Evins is a 51-year-old, single, African-American
male.  His religious affiliation is Muslim.  No unusual
physical characteristics were noted and he denied the
use of any nicknames or aliases.

II.   **DEVELOPMENTAL HISTORY**:

Inmate Evins is the elder of two children.  He stated
there were no prenatal or perinatal concerns or birth
defects.  He had no abnormalities of developmental
milestones.  All speech, language and motor development
occurred unremarkably.  He denied any history of
cruelty to animals or any history of arson.  He stated
he had no significant childhood medical history and
denied any childhood history of physical or sexual
abuse as either a perpetrator or a victim.

III.  **EDUCATIONAL HISTORY**:

Inmate Evins attended public school and dropped out of
high school in the 11th grade.  He received his high
school diploma in the Job Corps in 1969.  He also
received a GED in 1969.  His last TABE score was 9.4 in
1986.  He has taken classes at three colleges, mainly
in psychology.  He does a lot of reading on his own.
He also teaches class in peer education in sexually
transmitted diseases.

EVINS        D-24948        CTF-CENTRAL        12/27/99        gmj

EVINS, GLYNNON
CDC NUMBER:  D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO


IV.   <u>FAMILY HISTORY</u>:

Inmate Evins states that his mother died during
childbirth in 1949 when his younger brother was born.
His father passed away in 1973.  His grandmother, who
raised him, passed away in 1971.  Inmate Evins' brother
is living in Santa Rosa.  He stays in contact with his
aunt (who also raised him) by phone and letters.  He
states that his relationships with his remaining family
members are close both historically and currently.

V.    <u>PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION</u>:

Inmate Evins states that he is a heterosexual male.
He denied any history of high-risk sexual behavior
either prior to or since incarceration.

VI.   <u>MARITAL HISTORY</u>:

Inmate Evins was married from 1978 to 1990 and
subsequently divorced.  He has three children from that
marriage.  He was also married for a year and a half.

VII.  <u>MILITARY HISTORY</u>:

Inmate Evins states that he spent three years in
he U.S. Army.  He did one tour of duty for 13 months in
Vietnam as a combat engineer.  He was honorably
discharged from the army at the rank of PFC.

VIII. <u>EMPLOYMENT AND INCOME HISTORY</u>:

Prior to his incarceration, inmate Evins had his own
business.  He started a Vietnam veteran home
improvement company.  He also spent a few years working
as a roofer.  He had a tropical fish store for a year
and a half in Oakland.  Since incarceration, he has
taken two vocational courses.  He worked in electronics
and was transferred, and again in drafting and was
transferred here to CTF.  He is now on the waiting list
for vocational VCR.

IX.   <u>SUBSTANCE ABUSE HISTORY</u>:

Inmate Evins started smoking marijuana at the age of 18
while he was in the service.  He uses an Islamic

EVINS       D-24948       CTF-CENTRAL       12/27/99       gmj

EVINS, GLYNNON
CDC NUMBER:  D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE


addiction program and has been doing that for one year
in order to work on his addiction.  He also attended
Alcoholics Anonymous for five years.  He took Dr.
Bakeman's Life Skills class in 1995.

X.   PSYCHIATRIC AND MEDICAL HISTORY:

Inmate Evins has no prior diagnoses nor serious
illnesses.  He has had no medical or psychiatric
hospitalizations and has had no serious accidents or
head injuries.  He has no history of suicidal ideation
or suicide attempts.  He has had no seizures or any
other neurological condition.  He has had no history of
disabilities or significant impairments.  He is on no
medication at this time.

XI.  PLANS IF GRANTED RELEASE:

Should inmate Evins be given a parole date, he would
parole to Vallejo, where he would live with his aunt.
He would open a studio for his art work.  He would also
go to school because he has benefits from the G.I.
bill.  He believes that he would do fine on parole.

CLINICAL ASSESSMENT

XII. CURRENT MENTAL STATUS/TREATMENT NEEDS:

A. Inmate Evins appeared his stated age of 51.  He was
appropriately dressed and groomed.  He was cooperative,
calm and alert during the interview.  His speech was
clear and readily understandable.  His affect was
normal.  His flow of thought was normal with no
hallucinations nor delusions noted.  He was fully
oriented and his intellectual functioning was estimated
to be in the average range.  His attention and
concentration were adequate for purposes of this
examination.  There was no evidence of a mood or
thought disorder.  His insight and judgment appeared to
be intact.  He showed good insight into his commitment
offense.

B. CURRENT DIAGNOSTIC IMPRESSIONS:

AXIS I:   Cannabis Abuse, in remission.
AXIS II:  No Contributory Personality Disorder.

EVINS, GLYNNON
CDC NUMBER: D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

  AXIS III: No Contributory Physical Disorder.
  AXIS IV: Incarceration.
  AXIS V:  GAF = 80.

  Should this inmate at this time be given a parole or
  release date, it is expected he will be able to
  maintain his present gains in the community.

XIII. REVIEW OF LIFE CRIME:

  Inmate Evins described the circumstances surrounding
  his commitment offense. He states that the crime
  occurred at a drug house and the entire incident was
  unfortunate for both he and the victim. He states that
  it was an accident. The victim surprised him in a dark
  room. He states that this incident was very bad and
  that not a day goes by that he does not thing about
  this. He states that his family is going through very
  difficult times and he has no way to put his life back
  together at this point. He just hopes that at some
  point he can legally express his deep sorrow and
  remorse to the family of the victim.

XIV. ASSESSMENT OF DANGEROUSNESS:

  A. It is felt that this inmate would pose a less than
  average risk for violence when compared to this
  Level II inmate population.

  B. If released to the community, his violence
  potential is estimated to be no higher than the
  average citizen in the community.

  C. The most significant risk factor as a precursor to
  violence for this inmate would be a return to the
  use of marijuana or other illegal drugs.

XV. CLINICIAN OBSERVATIONS, COMMENTS AND RECOMMENDATIONS:

  A. This inmate is responsible for his behavior. He
  has the ability to abide by institutional standards
  and has done so during his incarceration period.

  B. This inmate has no mental health disorder which
  would necessitate treatment either during his
  incarceration period or after parole.

EVINS  D-24948  CTF-CENTRAL  12/27/99  gmj

EVINS, GLYNNON
CDC NUMBER:  D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE


       C.   Since this inmate admits having a drug problem, he
            would benefit from attendance at Narcotics
            Anonymous and/or periodic drug testing as a
            mandatory part of parole.


*M. Carswell PhD*

M. CARSWELL, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad


STEVEN J. TERRINI, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

MC/gmj

D:  12/15/99
T:  12/27/99

MENTAL HEALTH EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
JULY 2002 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
APRIL 10, 2002

Inmate Glynnon Evins, CDC# D-24948, was seen for a mental
health evaluation for the Board of Prison Terms by Steven J.
Terrini, Ph.D., Staff Psychologist at CTF, on 12/02/99 for
the January 2000 Lifer Calendar.

According to the instructions given to Wardens and Health
Care Managers by Steven Cambra, Jr. (CDC), and G. Lewis
Chartrand, Jr. (BPT) in September 1998, once a mental health
evaluation is completed in the new format (revised in August
1998), a new evaluation is not necessary when an inmate
appears before the Board of Prison Terms unless the BPT has
filed a BPT 1000A request for a new report.

Since there is no BPT 1000A request on file, a mental health
evaluation was not conducted at this time.

B. ZIKA, Ph.D.
Senior Supervising Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD

BZ/gmj

D:  04/10/02
T:  04/10/02

EVINS      D-24948      CTF-CENTRAL      04/10/02      gmj

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
JULY 2003 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
JUNE 21, 2003

This is the fourth psychological evaluation for the Board of Prison Terms on inmate
Glynnon Evins, CDC# D-24948. This report is the product of two personal interviews,
totaling a duration of about 90 minutes. In addition, his Central file and medical file were
reviewed. This evaluation was conducted on 06/21/03.

Inmate Evins is serving a 15-year to life sentence from Fresno County for the offense of
PC 187, Murder, Second Degree, With Use of a Firearm, which occurred on 01/14/85.
His MEPD is 01/21/96. This report is prepared for his subsequent number four hearing
for July 2003.

## PSYCHOSOCIAL ASSESSMENT

**I.    IDENTIFYING INFORMATION:**

Inmate Glynnon Evins is a 54-year-old (DOB 12/03/48), African-American, first
term male. This report is prepared for his subsequent number four hearing for
July 2003. He is a practicing Muslim.

## CLINICAL ASSESSMENT

**XII.   CURRENT MENTAL STATUS/TREATMENT NEEDS:**

Inmate Evins was interviewed on two separate occasions. He was alert and well
oriented. He came promptly to both of the interviews. His hygiene and grooming
were appropriate. His thinking was rational, logical, and coherent. There is no
history of mental or emotional problems. There is no evidence of
psychopathology seen in the interviews. His affect was appropriate. There was
no evidence of depression or anxiety. His mood was friendly, cooperative,
talkative, and outgoing. His intellectual functioning is in the average ranges. His
judgment and insight is intact.

Inmate Evins was involved in cocaine use at the time of the commitment offense.
His commitment offense occurred 18 years ago. He has been very active in
participation in self-help programs, such as Alcoholics Anonymous and Narcotics
Anonymous. In fact, he has been a leader in these programs, and he wants to

COPY TO INMATE ON 5/2/03

EVINS, GLYNNON
CDC NUMBER: D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

pursue this activity when he is released to the community. He hopes to become a counselor, and eventually a director, of these programs. His participation and understanding of the issues involved are outstanding. In view of the fact that he has remained clean and sober over the years, and the commitment offense occurred 118 years ago, there is no evidence at this point in his life that he meets a diagnosis of cocaine dependence. It could be stated that this was by history only.

### CURRENT DIAGNOSTIC IMPRESSIONS:

| | |
|---|---|
| **AXIS I:** | No Contributory Clinical Disorder. |
| **AXIS II:** | No Contributory Personality Disorder. |
| **AXIS III:** | No Contributory Physical Disorder. |
| **AXIS IV:** | Life term incarceration. |
| **AXIS V:** | GAF = 90. |

## XIII.  REVIEW OF LIFE CRIME:

Inmate Evins was given a one-year parole denial by the Board of Prison Terms. They noted that they wanted a new psychological evaluation to address conflicting versions of the commitment offense.

The details of the commitment offense were discussed at length. One incident that was left out of the record was the fact that, just prior to the commitment offense, inmate Evins's brother had parked his car in front of inmate Evins's house. That night, someone drove by, recognized his brother's car, and shot it full of bullet holes. This was a very unnerving experience, particularly when inmate Evins has a history of post-traumatic stress disorder related to his horrendous experiences in Vietnam. As a result, he was carrying a weapon at the time of the commitment offense.

Inmate Evins stated that, at the time of the offense, he was up all night, free-basing cocaine. He had been up the previous three to four nights doing the same thing. He does not really know why he went to the victim's house. He remembers receiving a phone call from Kenneth Parker about buying a motorcycle. Mr. Parker picked him up, and was driving over to the victim's house. He remembers Mr. Parker telling him that someone at the house wanted to see him.

Inmate Evins can remember the fact that his judgment was severely impaired. He was heavily under the influence of drug abuse at the time. He thought that trouble might be involved, so he armed himself. He stated that there was no intent to hurt anybody. He did not have any thoughts of premeditation. He did not know the victim, Rogers, before.

The victim's house was a known drug house. Inmate Evins had been in that residence in the past. As people frequently came and went out of that residence, he felt free to walk into the residence. He entered the bedroom where Marcie

EVINS          D-24948          CTF-CENTRAL          06/21/03          gmj

EVINS, GLYNNON
CDC NUMBER: D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

Johnson and the victim, Otis Rogers, were sleeping. He noted that he did not kick the door in. He stated that the bedroom door did not have a door handle. It had no latch at all, and was held closed with a towel wedged between the door and the door jamb. Inmate Evins pushed the door open, and the victim woke up and began arguing with inmate Evins. This argument escalated, and inmate Evins shot and killed the victim with a gunshot wound to the chest.

There are several factors involved in this offense. Not the least was the fact that he was fairly intoxicated on cocaine at the time, and as a result his judgment was impaired. Also, the well-documented history of post-traumatic stress disorder associated with his Vietnam experiences would contribute towards his impaired judgment.

Inmate Evins clearly has deep feelings of remorse about this commitment offense. He stated that he thinks about it on a daily basis. He is very aware of the destructive impact of the commitment offense, including the impact upon the victim's family. He was able to talk about the ripple effect that occurs from such an offense, and how it has affected everything in life, including his own family. His feelings of remorse and sorrow about the commitment offense are quite sincere and genuine.

## XIV.  ASSESSMENT OF DANGEROUSNESS:

A. After 18 years of incarceration, inmate Evins has no serious disciplinary write-ups. This is a remarkable achievement. It surely speaks loudly to the fact that he is not a potentially dangerous individual within the controlled setting of the institution. His potential for dangerous behavior is definitely below average when compared to other inmates.

B. Although inmate Evins has a history of post-traumatic stress disorder due to absolutely horrendous experiences while in Vietnam, there is no indication that this is a problem at this point in his life. His conflicts, despair, and troubled emotional feelings related to that have been resolved over the years. He has remained entirely disciplinary-free within the institution. He is very active in self-help groups. He is actually participating in college courses at this point in his life. His thinking is future-oriented, prosocial, and desiring to be helpful to others. His violence potential when released on parole is also definitely below average in comparison to other inmates. His violence potential is no greater than the average citizen in the community.

C. The only significant risk factor associated with the commitment offense was the fact that it was related to cocaine abuse at the time. Inmate Evins has been very active in participation in self-help groups over the years. He has been an active leader in these activities. He has a very good understanding about the factors associated with drug and alcohol abuse. This is no longer a factor in

EVINS, GLYNNON
CDC NUMBER: D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

his life, and the probability of his reversion to drug and alcohol use is nil. This inmate is a 54-year-old, mature individual who has completed 18 years of excellent institutional adjustment. He is a changed man from the way he was living at the time of the commitment offense.

## XV.    CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

Inmate Evins is free from any mental or emotional problems that would contribute towards dysfunctional adjustment in the community. There is no evidence of psychopathology. He does not need further psychological evaluation. He does not need to participate in additional psychotherapy. He does have a valid trade which he can use in the community. He is certified in vocational air conditioning. He also has other trades available that he could use. Inmate Evins is a disabled Vietnam veteran, and he is receiving VA benefits. He will be receiving benefits of several hundred dollars a month when he is released. Also, he has family support in the community, as well as job offers.

The prognosis for successful parole adjustment in this case is excellent. There are no psychological reasons evident why inmate Evins could not be granted a parole date. As a former parole agent, I supervised over 50 life term inmates in the community. I would not have any hesitation supervising inmate Evins in the community on my caseload.


**MELVIN MACOMBER, Ph.D.**
Licensed Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD


**B. ZIKA, Ph.D.**
Senior Supervising Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD

MM/gmj

D: 06/21/03
T: 06/24/03


EVINS        D-24948        CTF-CENTRAL        06/21/03        gmj

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
NOVEMBER 2004 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
OCTOBER 27, 2004

This is an updated psychological evaluation for the Board of Prison Terms on inmate
Glynnon Stanley Evins, CDC# D-24948. This report is based on a personal interview of
this inmate on 10/27/04. Additionally, in preparation for this update, the central file, unit
health record, and previous BPT reports were reviewed. The reader is specifically
referred to the last psychological evaluation completed by Dr. Macomber in June 2003.
Today's single contact interview is for the express purpose of preparing this report.

The inmate was informed of the nature and the purpose of the interview, and the lack of
confidentiality inherent in the present assessment. He was also informed that a report for
the Board of Prison Terms would be prepared. He understood this and agreed to
participate.

Inmate Evins is a 55-year-old, divorced, African-American male. His date of birth is
12/03/48. He stated his religion was Islam. He presented with no unusual physical
characteristics. He stated that he goes by the religious-based nickname of "Pasha".

Inmate Evins reported that very little has changed since his last psychological evaluation.

He holds a job on the yard crew, in which he has been working for about one year.

Additionally, inmate Evins is involved in a variety of personal growth and self-help
opportunities. He is currently enrolled in a creative writing class and in an arts class
through Arts in Corrections. He continues with his involvement in Alcoholics
Anonymous. Furthermore, through the mental health department, he is involved in a
Vietnam Veterans' group, and also helps to facilitate a second Veterans' group that meets
in the Catholic chapel. Finally, he has completed a six-week, music relaxation group
therapy program, also offered through the mental health department. Overall, there are
no mental health issues, and inmate Evins has made significant gains in maturity and self-
growth since being incarcerated for his commitment offense.

There are no further additions to add to this updated report. As indicated in his previous
BPT report prepared by Dr. Macomber, inmate Evins remains a suitable and very low-
risk candidate for release.

Jeff Howlin, Ed.D.
Staff Psychologist
Correctional Training Facility, Soledad

EVINS          D-24948          CTF-CENTRAL          10/27/04          gmj

EVINS, GLYNNON STANLEY
CDC NUMBER:  D-24948
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

*[signature]* , Ph. D.

B. Zika, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

JH/gmj

D:  10/27/04
T:  10/28/04

*D:\Word Files\BPT - 2004\EVINS, GLYNNON   D-24948   11-04   HOWLIN.doc*

EVINS          D-24948          CTF-CENTRAL          10/27/04          gmj

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
AUGUST 2005 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
AUGUST 26, 2005

This is an updated psychological evaluation for the Board of Prison Terms on inmate
Glynnon Stanley Evins, CDC# D-24948. This report is based on a personal clinical
interview of this inmate on 08/26/05. Additionally, in preparation for this update, the
central file, unit health record, and previous BPT psychological reports were reviewed.
The reader is specifically referred to my last, updated psychological evaluation done less
than one year ago (in October 2004), as well as Dr. Macomber's thorough psychological
evaluation done in June 2003. Today's clinical interview and the review of all pertinent
documents were for the sole purpose of preparing this report.

The inmate was again informed of the nature and the purpose of the interview, and the
lack of confidentiality inherent in the present assessment. He was also informed that a
report for the Board of Prison Terms would be prepared. He understood this, and agreed
to participate.

Essentially, for the purposes of this updated report, it was requested that the focus be
upon comments made in the governor's denial of parole for this inmate. Inmate Evins
explained that he was recommended for parole at his Board hearing, and it was
subsequently denied by Governor Schwarzenegger.

Before discussing comments surrounding the governor's reversal letter, it should be noted
that, since his last updated evaluation by this writer in October 2004, inmate Evins
continues to be involved in self-help programs. He showed documentation that he is now
registered for additional college courses. He has completed a Hepatitis C support group,
conducted by a psychologist at CTF. He also continues to be involved in the Veterans'
Support Group. Past self-help involvement has been documented on prior reports.

Inmate Evins again discussed the commitment offense. His version was essentially
similar to that documented and discussed by Dr. Macomber in his 2003 evaluation. There
is no need to repeat this in detail for the purposes of this report. Inmate Evins did say,
however, that yes, at the beginning of his incarceration period, and when he was arrested
for the commitment offense, his story was different than it is now. He explained those
times "as my days of madness." He stated that there was deception, with many different
versions of what specifically happened given by different individuals involved, and he did
admit that at the time, his story was not the truth of the matter. He now states that what
he is saying about the details that led up to the crime and the crime itself is the truth. He
said, "I did shoot the man. I did not know him." He also discussed the criminal lifestyle
he was leading, caught up in drug abuse and sales, which certainly, at least indirectly,
related to the commitment offense itself. He was intoxicated at the time of the crime.

Inmate Evins also addressed another concern in the governor's reversal letter related to a
voluntary manslaughter charge prior to the commitment offense. Inmate Evins discussed

*EVINS, GLYNNON STANLEY*
*CDC NUMBER: D-24948*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE TWO*

this in detail, and stated that a man was trying to rob his girlfriend; he was choking her. Inmate Evins intervened, took the gun from the individual, and shot him to death. He stated that he pled guilty in self-defense. He denied being intoxicated at the time of these events.

Inmate Evins went on to discuss the man he was prior to being incarcerated vs. the man he has become. He talked about the various ways he has made efforts to improve self through involvement in self-help opportunities, through involvement in his religious faith (that of Islam), and through his artistic endeavors. He said, "I'm an old man. I'm at a new chapter in my life. I do not want to repeat anything in my past."

We discussed potential conflictual, hypothetical situations, and he explained how he would handle these situations without violence. He was entirely convincing in his discussion about what he would do, and what he would not do. He explained that there would always be several options, including calling the police, if he was ever caught up in any kind of situation that may lead to violence. He also added that, as a last resort, he would "take a bullet" himself before ever displaying violence again.

Finally, he said, and probably most importantly, that he aims to live a life in which he hopes to not place himself in situations where violence could happen. This will most likely be greatly reduced by avoiding substance use, gang activity, drug sales, etc., as patterns of his past.

Finally, concerning the governor's reversal letter, is the idea of the governor's concern of questionable parole plans. Again, inmate Evins discussed his plans in detail. His primary employment idea is to work for a first cousin, who has a hot dog business, and apparently this is a thriving business. It opened in 2003. He stated that he has an article from the San Jose Mercury News, discussing the success of this business. He said that it is a valid venture, and he plans on this being his first choice. Additionally, as discussed in past reports, he is a disabled Vietnam veteran, and will receive benefits. He also stated that he has an aunt who has agreed to provide help with transitional things that could come up, such as financial concerns, a place of residence, and help in job-seeking if his venture in the hot dog business were to not go well.

Inmate Evins stated that, even though securing work and giving back to society is very important, one of his primary goals is to be there for his children and grandchildren. He said about this, "My main job is to go out and put my family back together."

As mentioned in Dr. Macomber's report, he continues to be involved in Alcoholics Anonymous and Narcotics Anonymous, and plans to follow through with this if paroled. Ideally, he would like to be in a position to help children and adolescents who may have similar substance abuse problems, and guide them in making better choices in an effort to keep out of prison and hurting others.

Based on what was discussed during this interview, it does appear that inmate Evins has viable parole plans. He has family support in place. He has disability benefits to fall

*EVINS, GLYNNON STANLEY*
*CDC NUMBER: D-24948*
*BPT PSYCHOLOGICAL EVALUATION*
*PAGE THREE*

back on, a fairly detailed job plan, and support through NA and AA to prevent a possible slide back into substance use. He also has skills as an artist as well. Overall, there are no mental health issues in place for inmate Evins, and his past substance abuse history is well managed. Inmate Evins has excellent insight into this past, and was very convincing in his talk about remaining sober and staying sober if paroled.

As I concluded in my October 2004 report, my opinion is similar to that of Dr. Macomber's opinion. There is no need to continue referring this inmate back for further psychological evaluations. Psychological factors should not be a consideration in decisions to parole this inmate. He does not need further psychological evaluation. Additionally, there is no recommendation for further therapy to address the commitment offense or insight into his past. It is recommended that inmate Evins continue with his excellent record within CDC, and follow through with plans discussed during this interview.


*Jeff Howlin, Ed.D.*
*Staff Psychologist*
*Correctional Training Facility, Soledad*


*B. Zika, Ph.D.*
*Senior Supervising Psychologist*
*Correctional Training Facility, Soledad*

*JH/gmj*

*D: 08/26/05*
*T: 08/29/05*


*D:\Word Files\BPT - 2005\EVINS, GLYN   D-24948   08-05   MACOMBER.doc*

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JANUARY, 2000 CALENDAR

EVINS, GLYNNON                                                    D-24948

## I.    COMMITMENT FACTORS:

A.    **LIFE CRIME:** Murder 2nd Degree, PC 187, 1 Count, Fresno County, Case Number 335276. Sentence: 15 years to Life, plus 2 years enhancement 1202.5 PC. MEPD: January 24, 1996. Inmate Evins was received by the California Department of Corrections (CDC) on March 10, 1986. Victim: Otis Rogers, age unknown.

1.    **Summary of Crime:** According to testimony submitted by witness, Patricia Wise, and Preliminary Hearing Data, during the early morning hours on January 14, 1985, Evins entered the residence of Patricia Wise, at 2329 South Poppy Avenue, Fresno, California. Evins kicked the closed bedroom door open where Otis Rogers (victim) and Marcy Johnson were sleeping, awoke them and commenced arguing with victim Rogers. The argument escalated and Evins shot and killed victim Otis Rogers by means of one gunshot wound to the chest. After the shooting Patricia Wise observed the subject leave victim Rogers' room with a gun in his possession and exit the house with a friend who had remained in the living room during the exchange. After Evins left, Patricia went to the bedroom, opened the door and observed Otis Rogers was bleeding from the mouth and chest and Marcy Johnson was unharmed. Paramedics and the police were summoned. Rogers was pronounced dead at the scene. The cause of death was hemorrhage and shock due to a gunshot wound of the chest. Investigation by Fresno Police Department revealed that Marcy Johnson was Evins' girlfriend and that he had made previous statements that he would kill anyone who messed around with Marcy Johnson. Evins was subsequently arrested by Van Nuys Police Department on July 19, 1985 on a warrant and was transported to Fresno County Jail, July 25, 1985 for trial. (Source documents: Court Transcript, pages 2 and 3.)

2.    **Prisoner's Version:** Evins stated that the morning of the offense, he had been up all night, free-basing coke, as he had done the previous 3 to 4 nights. He does not know why he went to the victim's house. He remembers being phoned by Kenneth Parker about buying a motorcycle and Parker picking him up and driving him over to the house where Rogers was killed. He vaguely remembers Parker telling him someone was at the house who wanted to see him. Due to the drugs in his system, impairing his judgment, Evins thought he was being "set up" and armed himself in case of an attack. Evins states he is guilty of stupidity along with other possible mental malfunctions including, but not limited to, Vietnam Post Traumatic Stress Syndrome and heavy drug usage. However, he indicates there was no malice or premeditation as he did not know Rogers before the 14th of January. Evins claims the second time he saw his face was in the court when the D.A. showed him a picture of Rogers. Evins denies making a statement that he "would kill anyone who messed with Marcy Johnson", as she was not his girlfriend. However, he admits that their relationship was based on drugs and mutual sexual contact, but

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JANUARY, 2000 CALENDAR

indicating that it was not serious. Evins states that the shooting was an accident in which afterward the gun accidentally discharged. Afterward he asked Rogers if he was shot, and he was surprised and shocked when Rogers asked him "Why did you shoot me?" Evins wished he could undo the past, he is very remorseful for his actions and takes responsibility for the death of another human being. He states that "I don't feel sorry for myself but I feel sorry about what happened and all the people who were affected by the commitment offense."

B.    **AGGRAVATING/MITIGATING CIRCUMSTANCES**

1.    **Aggravating Factors:**

a.    The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime. He could have injured or killed Marcy Johnson who was in the bed with the victim Rogers when he was shot and killed.

b.    The victim was particularly vulnerable in that he was at a disadvantage, defenseless and unable to protect himself due to being suddenly awakened and attacked.

2.    **Mitigating Factors:**    None.

II.    **PRECONVICTION FACTORS**

A.    **Juvenile Record:**  None.

B.    **Adult Convictions:**  On November 29, 1974, arrested for 187 PC, Murder. He pled guilty and was convicted of voluntary manslaughter on October 30, 1975. Sentenced to 60 month probation, 365-day jail and placed on 120 days probation. On September 4, 1980 arrested for 487 PC, Grand Theft, convicted and sentenced: 24 month summary probation.

C.    **Personal Factors:**  Evins is the oldest of two children born to Joe and Madeline Evins in Berkeley, California on December 3, 1948. During a subsequent birth his mother died when he was nine months old. Subsequently, he was raised alternately by his grandmother in Louisiana and his father in Kansas City, Missouri. He describes his father as a very disturbed man who was distant from him with no intimate relationship. His father died when he was in Vietnam. He dropped out of high school in Kansas City and joined the Job Corps in 1967. He remained in the Job Corps for one and a half years. He obtained his GED and high school diploma in 1968. He entered the service, the Army, in 1969 and did tours of duty in Vietnam. He was involved in combat and shot several enemies and witnessed them and many other people die. Following his tour in Vietnam he went to Germany and later discharged honorably as a Combat Engineer at the grade of E-3 in 1972. He denies the use of any drugs as a teenager, however, in Vietnam he began using marijuana and used hashish while he was in Germany and later on started using and selling cocaine. Evins was married at the time of the commitment offense. He married Patty

McAllister in October 26, 1983. They lived together for 13 years and three children born from this relationship, ages 19, 17 and 16. They divorced on November 5, 1990 during his incarceration. Evins had not been employed since 1980 due to a disability for which he received 20% disability pay from the Veteran's Administration. He was paid $122.00 per month which he augmented with landscaping and handyman type jobs on the side. Following the Vietnam War, Evins was involved in V.A. Therapy programs since 1977. He stated "when I went to Vietnam I was never the same again. I was disoriented and screwed up." (Source: Probation Officer's Report (POR), Inmate and Psychiatric Report.)

### III.    POSTCONVICTION FACTORS

**A.    Special Accommodations/Disability:** N/A

**B.    Custody History:** Evins is 50 years old and has been incarcerated for 13 years. He was originally received at CMF Reception Center on March 10, 1986. He was transferred to CCI-IV from CMF-RC and placed on Close A custody. On June 18, 1986, he transferred to CMC-E for Category J program based on psychiatric concerns and placed on Medium A custody. On May 24, 1994, he transferred to CTF-II. He was placed on Medium A custody and released to general population. Evins overall behavior pattern during incarceration has been excellent. He has not been a disciplinary problem and has programmed well in both his housing unit and his work assignments. He has not received a CDC 115 during his incarceration. His work reports over the years have shown him to be an above average to exceptional worker. (Refer to CDC 101's Work Supervisor's Reports in the Central File.) He has involved himself with various activities and work program options available to him. In particular he has worked as a Dental Lab Technician, Maintenance Worker, Clerk in the Hobby Shop and an Electrician. He participated in band activities as a musician, has worked as a MAC Chairman, and participated in Vietnam Veterans Therapy Group. Currently he is assigned to Arts and Correction and is developing to a commercial graphics and fine artist. Evins' medical and mental status at the present time is fair health except for a few ongoing problems relating to the past and the Vietnam War. Evins has maintained a good relationship with staff and inmates while being in the CDC system. Evins appeared before the Board of Prison Terms in January of 1997 for a Subsequent Parole Consideration Hearing. He was found unsuitable for parole for an additional 3 years. The Board recommended he remain disciplinary-free, upgrade vocationally and educationally and participate in self-help and therapy programs.

**C.    Therapy & Self-Help Activities:** Documents from the previous hearings have been considered and that information remains valid. During his incarceration Evins participated and involved himself in mental help therapy programs including; Process-Oriented group, Communicative Skill and Lifeskills group. Additionally, he voluntarily participated in Victim's Awareness program, Fund Raising committee, decorating high school graduation celebration and is a certified Peer Educator to voluntarily teach Public Health Education classes on Sexually Transmitted Diseases. Evins has been a member of the Twelve Step program of Alcoholics/Narcotics Anonymous at the Correctional Training Facility since March, 1995. (See Postconviction Progress Report for further details.)

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JANUARY, 2000 CALENDAR

D. **Disciplinary History:** There are no CDC 115's since his incarceration. Evins' entire disciplinary history consists of three CDC 128 As dated August 19, 1988 for Failure to Obey a Physician's Order, on October 2, 1994 for Disrespect, and on May 10, 1992 for Not Receptive to Counseling.

IV. **FUTURE PLANS:** Evins currently has no parole plans in his last legal county of residence: Fresno.

A. **Residence:** If granted parole, Evins plans to live with his aunt, at 667 Arkansas Street, Vallejo, California 94590, Telephone number (707) 642-2188. He plans to reside there temporarily until he can obtain independent residence.

B. **Employment:** Evins does not have a job offer, however he indicated that if he lives with his aunt in Vallejo he can work on his uncle's ranch in Santa Rosa. Furthermore, he reports feeling confident that the experience and skill he has acquired during incarceration as an electrician, in heating, air conditioning, and refrigeration in addition to his past work experience in construction, will enable him to obtain gainful employment.

V. **USINS STATUS:** N/A

VI. **SUMMARY**

A. Considering the commitment offense, prior record and prison adjustment, this writer believes Evins would probably pose a low degree of threat to the public at this time, if released from prison. Evins has continually involved himself in self-help therapy program and maintained and developed into an individual who is able to control and manage himself within the confines of a controlled environment. It is likely that in a less controlled setting, such as return to community, Evins will hold his present gains.

B. Prior to release, Evins could benefit from: remaining disciplinary-free, continue attending Alcoholics/Narcotics Anonymous programs and continue to participate in work assignment.

C. This report is based on an interview with Evins on October 15, 1999, lasting approximately two hours, incidental contact in the housing unit, and a complete review of the Central File.

D. Evins reviewed his Central File on October 15, 1999, in preparation for his upcoming Subsequent Parole Consideration Hearing. (See CDC 128 B dated October 15, 1999.)

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JANUARY, 2000 CALENDAR


_____
H. Farbakhsh
Correctional Counselor I



_____
B.H. Barragan
Correctional Counselor II



_____
J.L. Clancy
Facility Captain



_____
J.K. Tyler
Classification and Parole Representative



EVINS, GLYNNON          D-24948                        CTF-SOLEDAD      JAN/2000

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐  DOCUMENTATION HEARING

☒  PAROLE CONSIDERATION HEARING

☐  PROGRESS HEARING

INSTRUCTIONS
  TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
  TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
                 ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 10/96 to 10/97 | | | **PLACEMENT**: Correctional Training Facility <br> **CUSTODY**:  Medium A <br> **CLASSIFICATION SCORE**:  0 points. <br> **ACADEMIC**:  None noted during this period. <br> **WORK**:  Was assigned to the Clothing Room as Sewing Machine and Repair Operator.  Received work report rated above average and exceptional. (See CDC 101s dated 8/3/96 and 11/8/96.)  On 12/21/96 assigned to Graphic Arts and Corrections, received work reports reflecting above average to exceptional performance.  (See CDC 101s dated 6/12/97 and 9/8/97.) <br> **VOCATION**:  None noted during this period. <br> **GROUP ACTIVITIES**:  Evins has been a member of Alcoholics/Narcotics Anonymous program since March, 1995.  He has continued participation in this program, see CDC 128 Bs dated 10/29/96, 2/11/97, 3/25/97 and 8/29/97 as an Artist Assistant has voluntary helped with the Mural Project Arts, a fund-raiser for Salinas Valley Memorial Hospital.  See CDC 128 B laudatory chrono dated 10/7/97. <br> **PSYCH TREATMENT**:  None during this period of review. <br> **PRISON BEHAVIOR**:  Remained disciplinary-free during this period. |

CORRECTIONAL COUNSELOR'S SIGNATURE     *HRabakkel*     *ocl*          DATE  11-9-90*7*

Evins, Glynnon            D-24948            CTF            JAN/2000

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 10/97 to 10/98 | | | **PLACEMENT**: Correctional Training Facility<br>**CUSTODY**: Medium A<br>**CLASSIFICATION SCORE**: 0 points.<br>**ACADEMIC**: Received a certificate of completion of the Basic Infectious Disease requisite for the Inmate Peer Education program. See certificate of achievement dated December, 1997.<br>**WORK**: Continue his assignment in Arts and Corrections as an Artist and Clerk and Artist Assistant. Received above average to exceptional work reports, see CDC 101 dated 3/13/98.<br>**VOCATION**: None noted during this period.<br>**GROUP ACTIVITIES**: Continued participation in Alcoholics/Narcotics Anonymous meetings. See CDC 128 Bs dated 2/24/98 and 8/1/98. Received laudatory chrono dated 5/27/98 for assisting and preparing decorations for the 1998 Employee Appreciation Banquet.<br>**PSYCH TREATMENT**: None during this period of review.<br>**PRISON BEHAVIOR**: Remained disciplinary-free during this period. |

ORDER:

- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

- ☐ Previously imposed conditions affirmed.
- ☐ Add or modify

- ☐ Schedule for Progress Hearing on appropriate institutional calendar

Evins, Glynnon                D-24948                CTF                JAN/2000

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

CONTINUATION SHEET:  LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 10/98 to Present | | | **PLACEMENT**: Correctional Training Facility<br>**CUSTODY**:  Medium A<br>**CLASSIFICATION SCORE**:  0 points.<br>**ACADEMIC**:  None noted during this period.<br>**WORK**:  Continues his assignment in Arts and Corrections as an Artist Assistant and Clerk.  Received Work Supervisor's Reports reflecting exceptional and above average performance, see CDC 101 dated 3/31/99.<br>**VOCATION**:  None noted during this period.<br>**GROUP ACTIVITIES**:  Participated in Alcoholics/ Narcotics Anonymous program, see CDC 128 B dated 2/25/99.  Received CDC 128 B laudatory chrono for voluntarily teaching Public Health Education classes on Sexually Transmitted Diseases, see CDC 128-B laudatory chrono dated 6/24/99.<br>**PSYCH TREATMENT**:   None noted during this period.<br>**PRISON BEHAVIOR**:  Remained disciplinary-free during this period.  Received CDC 128 B laudatory chrono for his Artistic skill and effort contributed to the overall success of the 1999 CTF Employee Appreciation Banquet. |

ORDER:

☐  BPT date advanced by _____ months.          ☐  BPT date affirmed without change.
☐  PBR date advanced by _____ months.          ☐  PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐  Previously imposed  conditions affirmed.
☐  Add or modify

☐  Schedule for Progress Hearing on appropriate institutional calendar

| Evins, Glynnon | D-24948 | CTF | JAN/2000 |
|---|---|---|---|

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

# EXHIBIT "G"

# PROBATION

# OFFICER'S

# REPORT

GLYNNON STANLEY EVINS

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff

vs.

GLYNNON STANLEY EVINS          Defendant

ACTION NUMBER  335276-2

REPORT AND RECOMMENDATION OF THE
PROBATION OFFICER

| | | |
|---|---|---|
| Probation No. | 156638 | |
| CII  A05387801 | FBI | 666415N4 |
| ///SO  180570 | DA | 85S030 |
| Race: | | |

TO THE HONORABLE JUDGE OF THE ABOVE ENTITLED COURT:

Pursuant to the statutes and at the direction of the court, your probation officer hereby respectfully submits the following report and recommendation as to the above named defendant, after ( ) conviction in court trial (X) verdict in jury trial ( ) plea: Guilty

2517 South Holly, Fresno, CA
Address

37 (12-3-48) /     334 days
Age          Time in Custody

Public Defender, Marvin Shultz
Attorney

February 26, 1986        8:30 a.m.
Date of Sentencing       Time

PC 187/12022.5, Second Degree Murder with
Charge(s)     the Use of a Handgun

January 14, 1985
Date of Offense

July 19, 1985
Date of Arrest

Leonard I. Meyers         Three
Judge              Dept.

BRIEF SUMMARY OF FACTS:

On January 14, 1985, the defendant killed Otis Ray Rogers with the use of a handgun.

The foregoing instrument is a correct copy of the original on file in this office.

ATTEST:  MAR - 3 1986

GALEN LARSON, County Clerk
State of California, County of Fresno

By _____

## OPENING STATEMENT

On January 23, 1986, at the conclusion of a jury trial in Department Three of the Fresno Superior Court under Action #335276-2, defendant Glynnon Evins was found guilty by a jury of a felony violation of Penal Code Section 187, Murder in the Second Degree, along with the use of a firearm within the meaning of Penal Code Section 12022.5. On January 27, 1986, the court ruled that the prior conviction for a felony violation of Penal Code Section 192.1 was true within the meaning of Penal Code Section 667(a) and 1192.7(c)(1).

Sentencing was calendared for February 26, 1986 at 8:30 a.m. in Department Three of the Fresno Superior Court.

## CIRCUMSTANCES OF THE OFFENSE

The defendant was found guilty by a jury of a felony violation of Penal Code Section 187, Second Degree Murder, along with the use of a handgun within the meaning of Penal Code Section 12022.5. Evidence and testimony presented to the jury was not made available to this officer in relation to the circumstances of the offense. Therefore, information contained in this section was obtained from the testimony at the preliminary hearing held in Department One of the Fresno Municipal Court on August 28, 1985 under Complaint #F89289-3.

Patricia Wise testified that on January 14, 1985, she was residing at 2329 South Poppy Avenue which is a single-family dwelling with two bedrooms. Otis Rogers, the victim, was in one of the bedrooms sleeping with Marcy Johnson. During the morning hours of January 14, 1985, Patricia Wise heard a noise that sounded like a rumble or somebody hitting something. This noise was determined to be the defendant kicking the bedroom door open. Patricia Wise recognized the voices of persons arguing and identified the voices of victim Otis Rogers and defendant Glynnon Evins, also known as Jerry.

Patricia Wise stated that she was unable to hear exactly what the argument was about, but did her Glynnon Evins say "get up" then heard Otis Rogers say, "Man, I didn't do nothing, I didn't do nothing". Soon after this statement, she heard a gun shot coming from the front bedroom. She sat for a moment and thought, "That was a gun shot". She got up from her bedroom and got her children off the living room floor and took them into the kitchen. While in the kitchen, she saw the bedroom door open and defendant Glynnon Evins exit the bedroom with a gun in his possession. He then told a friend, Kenny, to "Come on, let's go". Kenny and defendant Glynnon Evins then left the residence.

Patricia Wise then went to the front bedroom and pushed the door open and observed Otis Rogers lying on the bed and Marcy on the floor. Otis appeared to be hurt as he was bleeding from the mouth and chest. Patricia Wise then went to the telephone and called paramedics and police. Both responded in a short period of time.

Through the course of the initial investigation, Fresno Police officers learned that Marcy Johnson was Glynnon Evins' ex-girlfriend and that he had made previous statements that he would kill anyone who messed around with Marcy Johnson.

An autopsy was performed on Otis Rogers which revealed that the bullet wound entered the upper left side of the chest with stippling around it. The wound was 13 inches below the top of the head and 3-1/2 inches to the left of the mid line of the chest. It struck the left clavicle and also the left subclavin artery about 1/4 inch above the aortic arch. The cause of death was hemmorage and shock due to a gunshot wound of the chest.

After the defendant's true identity was discovered, a warrant of arrest was issued. The defendant was arrested by the Van Nuys Police Department on July 19, 1985. He was subsequently transported to the Fresno County Jail on July 25, 1985.

## DEFENDANT'S STATEMENT

The defendant did not wish to submit a written statement, but did indicate that he plans to appeal the conviction.

## VICTIM STATEMENT AND ASSESSMENT

This matter has been referred to the Victim Services Unit of the Fresno County Probation Department with information to contact the victim's mother, Theresa Rogers. If a Victim Statement and Assessment letter is obtained prior to the date of sentencing, it will be made available for the court's consideration.

## STATEMENT OF THE DISTRICT ATTORNEY

A letter requesting a statement of views has been directed to the Fresno County District Attorney's Office. As of the date of dictation, no reply has been received at the Probation Office. Should one be received prior to sentencing, it will be attached to the report for the Court's consideration.

## DEFENSE STATEMENT

A letter requesting a statement of views has been directed to the Fresno County Public Defender's Office. As of the date of dictation, no reply has been received at the Probation Office. Should one be received prior to sentencing, it will be attached to the report for the Court's consideration.

## RESTITUTION

Restitution may be an issue due to burial expenses.

## PRIOR JUVENILE RECORD

There is no indication the defendant has a prior juvenile record.

## PRIOR CRIMINAL RECORD

The following is the defendant's prior criminal record as provided by the California Identification and Investigation Bureau under CII #A05387801:

| DATE | ARRESTING AGENCY | CHARGE | DISPOSITION |
|------|------------------|--------|-------------|
| 11-29-74 | CAID Alameda Co. | PC 187, Murder | 10-30-75, CASC Oakland, PC 192.1 PC, Voluntary Manslaughter, Conv./PG 8-10-76, Proc susp/comm 1203.03 PC 90 dy OB 8-10-76, CASC Oakland, Sentenced 60 mo. prob. 365 ds jl cond. of prob. 120 ds. cts. |

According to the defendant, he shot and killed a subject only in self-defense as the subject was coming at him and his girl friend in a threatening manner.

| 9-4-80 | CAID Alameda | Warrant, PC 487.1 Grand Theft Prop. | 1-6-81, CAMC Oakland/ PC 487, Grand Theft, Conv/PG, imp sen. ss 24 mos summ prob, rest'n. |

*stricken dimes*

## PROBATION HISTORY

According to the defendant's rap sheet, he was placed on five years formal probation on August 10, 1976 in Oakland, California under Superior Court Case #59402. During that five year period of time, he incurred only one arrest in Oakland for Grand Theft and was sentenced to 24 months summary probation. Apparently his formal probation through Superior Court was not violated.

## SOCIAL HISTORY

The following information was obtained from the defendant during an interview at the Fresno County Jail on February 6, 1986.

-4-

## FAMILY HISTORY

Glynnon Stanley Evins is 37 years of age and was born on December 3, 1948 in Berkley, California. The defendant is the oldest of two boys born to Joe Evins and Madaline Evins. The defendant states he does not know the whereabouts of his father and last saw his father during the middle 70's. The defendant's natural mother died during childbirth when the defendant was nine months old. The defendant was raised by his grandmother. The defendant indicated he does not know where his brother lives but his brother did come to trial.

The defendant attended Central Senior High School in Kansas City, Missouri through the 11th grade and dropped out. He joined the Job Corps in Pleasanton, California in 1967 and was in the Job Corps for a year-and-a-half. He obtained his General Education Diploma, along with is high school diploma in 1968. He joined the United States Army in January of 1969 and did a tour of duty in Viet Nam and also in Germany. He was given an honorable discharge as a combat engineer at the grade of E-3.

The defendant states that he is in the Outreach Program of the Viet Nam Veteran's Association. He also was involved in the Community Watch Program and King of Kings. In his spare time, he likes to work with children and do volunteer work at the Ivy Center. He also likes to ride motorcycles.

The defendant claimed that, for a period of two-and-a-half years, he was residing with his wife and family at 2517 South Holly in Fresno, California. However, it should be noted that the defendant was arrested in Van Nuys and apparently was in the Van Nuys area for some time.

## MARITAL HISTORY

The defendant indicated that he married the former Patty McAllister on October 26, 1983 while he was in the Veteran's Hospital. However, they have been together for approximately 13 years. Born from this relationship is Pasha, age 6, Parrish, age 3, and Fanta, age 2. The defendant states that his family is being supported by a grant from the Welfare Department and that his wife does volunteer work at the Veterans Hospital and is also going to Clovis Adult School to obtain her high school diploma.

## EMPLOYMENT HISTORY

The defendant states that he has not been employed for anyone since 1980 because of a disability. However, he does do landscaping and handyman-type jobs on the side.

## FINANCIAL STATUS AND REPORT FEES

The defendant has no earned income but receives a 20 percent disability from the Veteran's Administration which amounts to $122.00 per month. His assets include a 1957 Chevrolet pickup and his wife drives a 1979 Buick LaSabre. They were renting at their place of abode. The defendant has no other assets or liabilities.

## USE OF ALCOHOL/CONTROLLED SUBSTANCES

The defendant states he very seldom drinks alcoholic beverages. However, in relation to drugs and narcotics, the defendant states that he has taken "everything at one time", indicating that he started using narcotics from the time he went into the service until the time that he came to Fresno from Oakland in 1980. He admits "dabbling" in cocaine every now and then, but does not feel that he is addicted.

## PSYCHOLOGICAL OR MEDICAL HISTORY

The defendant indicated that his little toe on his right foot is missing due to an operation in 1975 or 1976 for "jungle rot" in which he contracted while in Viet Nam. He has had nine surgeries and is scheduled for nine more. He also suffers from rheumatoid arthritis and has bad head aches. He receives medical care through the Veteran's Hospital.

The defendant indicates he has never had any psychological counseling.

## STATEMENT OF REFERENCES AND INTERESTED PARTIES

The defendant did not wish to submit names for character references.

## CUSTODY

The defendant was arrested in Van Nuys on July 19, 1985 and remains in custody. As of the date of sentencing on February 26, 1986, the defendant will have served 223 actual days. With 111 days of conduct credits, the defendant is entitled to 334 days on the current offense.

## DISCUSSION AND EVALUATION

## FACTORS AFFECTING PROBATION

The defendant is statutorily ineligible for a grant of probation within the meaning of Penal Code Section 1203.6(a)(1)(I) as the defendant personally used a firearm during the commission of a murder (Rule 414a).

The defendant has demonstrated that he is definitely a threat to others in the community (Rule 414b).

-6-

NOTE:  The following circumstances in mitigation and aggravation are made available for future use by the Department of Corrections or the Parole Board as this is a serious crime with an indeterminate sentence in which aggravation and mitigation do not apply.

(The recommended application of the following factors and circumstances is set forth in the Conclusion section of this report.)

## CIRCUMSTANCES IN MITIGATION

Regarding circumstances in mitigation relating to the crime as set forth in Rule 423a, this officer has taken into account that the defendant may have committed this offense because of jealousy which is unlikely to recur (Subsection 3).

Regarding circumstances in mitigation relating to the defendant as set forth in Rule 423b, it is noted that the defendant apparently performed satisfactorily on a prior grant of probation (Subsection 6).

## CIRCUMSTANCES IN AGGRAVATION

Regarding circumstances in aggravation relating to the crime as set forth in Rule 241a, it is noted that the crime involved great violence, disclosing a high degree of cruelty, viciousness, and callousness on the part of the defendant.  He was also armed with a weapon and used a weapon which was charged as an enhancement pursuant to Penal Code Section 12022.5.

The defendant obviously had intentions to do physical harm to the victim as he had, on prior occasions, let it be known that he would kill anyone associated with his girl friend, Marcy Johnson.  The defendant entered the home, kicking down the bedroom door, and shot the victim after a brief arguement.  These acts show that the defendant did plan to carry out his threats, indicating premeditation (Subsection 8).

Regarding circumstances in aggravation relating to the defendant as set forth in Rule 421b, it is noted that the defendant has engaged in a pattern of violent conduct as this is the defendant's second conviction for taking a life and he represents a danger in others in society (Subsection 1).

## ENHANCEMENTS

The jury found that the defendant used a firearm within the meaning of Penal Code Section 12022.5.  This enhancement carries an additional term of imprisonment in a state prison of two years.  Also, the court ruled that the new offense is a serious offense and the prior felony conviction was also of a serious offense.  Pursuant to Penal Code Section 667(a), this prior felony carries an additional five years.

## CONSECUTIVE SENTENCE

Pursuant to Penal Code Section 669, consecutive sentences can be imposed for Penal Code Section 12022.5. Pursuant to Penal Code Section 667(a), the five year enhancement for a serious prior felony "shall run consecutively" to the terms of the present offense. Therefore, this officer recommends that the defendant receive two years for the use of a firearm pursuant to Penal Code Section 12022.5 and a full and consecutive five years for a serious prior felony conviction, for a commitment of seven years, consecutive to the indeterminate sentence of 15 years to life.

## CONCLUSION

Defendant Glynnon Evins is appearing before the cour for sentencing after being found guilty by a jury of Second Degree Murder with the use of a firearm. The court also ruled that the defendant's prior conviction was a serious prior felony.

The defendant has demonstrated that he is a serious threat to others in the community and the shooting death of victim Otis Rogers is the second life in which the defendant has taken with apparently no regard to solving his problems in other ways other than by violence and using weapons. This officer feels that the laws reflect society's position in relation to those who commit these violent acts and show their contempt for these crimes by requiring additional years for the use of a gun and prior serious felonies.

This officer urges the court to commit the defendant to state prison for the full and consecutive terms allowed by law.

## RECOMMENDED PRISON TERM

| CRIME | MIT/MID/AGG | BASE TERM | ENHANCEMENTS | CONSEC/CONCURR |
|-------|-------------|-----------|--------------|----------------|
| PC 187 2nd Degree | 15 yrs to life | | Yes/PC 667(a) 5 yrs. PC 12022.5 2 yrs. | Yes/7 yrs. |

TOTAL YEARS:  Twenty-two years to life

## RECOMMENDATION

It is hereby recommended that the defendant, Glynnon Evins, be committed to the California Department of Corrections for two years for a violation of Penal Code Section 12022.5, Use of a Firearm in the Commission of a Felony.

It is further recommended that the defendant be committed to state prison for an additional five years for the prior serious felony within the meaning of Penal Code Section 667(a) and 1192.7(c)(1), for a consecutive commitment of seven years.

It is further recommended the defendant be committed to state prison for 15 years to life for Second Degree Murder and this term be served following the consecutive determinate sentence of seven years, for a total commitment of 22 years to life.

It is further recommended the defendant be given credit for 334 days previously served (223 actual days, 111 good time/work time days).

In compliance with Government Code Section 13967, it is respectfully recommended that a restitution fine of $500.00 be imposed.

Respectfully submitted,

DON HOGNER, CHIEF PROBATION OFFICER

By: _____

Phil Erdman, Deputy

Dated: February 19, 1986

Read and Approved:

_____

Supervising Probation Officer
dll

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The foregoing report has been read and considered.

Dated:_____

_____

JUDGE OF THE SUPERIOR COURT

COURT FINDING

| CRIME | MIT/MID/AGG | BASE TERM | ENHANCEMENTS | CONSEC/CONCURR |
|---|---|---|---|---|
| PC 187 2nd Degree | _____ | ___ | _____ | _____ |

TOTAL YEARS:_____

PROOF OF SERVICE
( C.C.P. §§ 1013A, 2015.5)

STATE OF CALIFORNIA    )
                       )
COUNTY OF MONTEREY     )


I, **Leopoldo Cordero Garcia** , am a resident of the State of California, County of Monterey.  I am over the age of 18 years and ~~xxx~~ am not a party to the within action.  My residence address is the Correctional Training Facility, P.O. Box 689, Soledad, California 93960-0689.

On **September 28, 2006** , I served the following:


(1)  **PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS A - G;  In re Glynnon Evins.**

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid by Trust Withdrawal Form attached in the United States Mail in the institution's United States Mailbox, Correctional Training Facility, Soledad, California 93960-0689, addressed as follows:


OFFICE OF THE ATTORNEY GENERAL
STATE OF CALIFORNIA
**455 Golden Gate Avenue**
**San Francisco, CA 94102-7004**


There is regular delivery service by the United States Postal Service between place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this **28th** day of **September**      2006, at Soledad, California.


*Leopoldo C Garcia*
Declarant